UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Kathleen Furey,
27 Bellvale Lakes Road
Warwick, NY 10990,

    Plaintiff,

v.

Securities and Exchange Commission,
100 F Street N.E.,
Washington, DC 20549,

    Defendant.

Case number:

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and Privacy Act of 1974, 5 U.S.C. § 552a, to compel Defendant United States Securities and Exchange Commission ("SEC") to produce, provide access to, and make available certain records specified below which were requested by Plaintiff Kathleen Furey and that pertain to her.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g).

## PARTIES

3. Plaintiff is a citizen of the United States, a resident of the State of New York, and a current employee of Defendant SEC.

4. Defendant is an agency of the United States Government and has possession and control of the records that are the subject of this action.

## THE PUBLIC INTEREST IN THE RELEASE OF RECORDS

5. The facts underlying this complaint raise an issue of the highest public interest. The SEC has been *entrusted* with the power and duty of "great social and economic significance to the American people." Section 200.53 of Title 17 of the United States Code of Federal Regulations spells out that trust:

   Members of the Securities and Exchange Commission are entrusted by various enactments of the Congress with powers and duties of great social and economic significance to the American people. It is their task to regulate varied aspects of the American economy, within the limits prescribed by Congress, to insure that our private enterprise system serves the welfare of all citizens. Their success in this endeavor is a bulwark against possible abuses and injustice which, if left unchecked, might jeopardize the strength of our economic institutions.

6. Among the acts which Congress entrusted to the SEC is the enforcement of the Investor Advisor Act of 1940 (IAA) and the Investment Company Act of 1940 (ICA).

7. Few principles are more deeply engrained in Title 17 of the Code of Federal Regulations, which governs how the SEC must execute its powers and duties, than the mandates obligating the commissioners and staff of the SEC to vigorously enforce the securities acts

against those suspected of violating them. Among the federal regulations mandating the SEC to enforce the securities acts are the following:

   A. 17 CFR 200.55: "In administering the law, members of this Commission should vigorously enforce compliance with the law by all persons affected thereby…In the exercise of their judicial functions, members shall …impartially determine the rights of all persons under the law.

   D. 17 CFR 200.64: "Members should recognize that their obligation to preserve the sanctity of the laws administered by them requires that they pursue and prosecute, vigorously and diligently but at the same time fairly and impartially…all matters which they or others take to the courts for judicial review."

The above regulations are applicable to both SEC commissioners and SEC staff pursuant to 17 CFR 200.735-2(b), 17 CFR 200.50, and 17 CFR 200.51).

8. This case seeks an order directing the SEC to release records which relate to the following matters of high public interest:

   A. An assistant director within the New York Regional Office (NYRO), previously known as the Northeast Regional Office, had a personal policy and practice that his SEC group, approximately 20 staff attorneys plus support staff, from approximately January 1, 2002, through December 2008, did not bring administrative proceedings or civil actions under the IAA and ICA and therefore did not seriously pursue such cases. Said assistant director stated the policy and practice as follows: "We do not do IM (Investment Management) cases."

B. In October and November 2007, Plaintiff informed her supervisors, including the director of the New York Regional Office, that her assistant director had told her that he did not do IM cases. The director took no action known to Plaintiff to remedy, correct, or inquire into the personal decision of Plaintiff's assistant director to impose a moratorium on IAA or ICA cases. Instead, the director told Plaintiff she could recant her allegation or present it to the SEC's inspector general. Consequently, and reluctantly, Plaintiff informed the SEC's inspector general in November 2007 and thereafter of the policy and practice of her assistant director not to enforce the IAA or ICA against suspected violators of those acts. Shortly after Plaintiff's disclosures to her supervisors and Defendant SEC's inspector general, Plaintiff's branch chief and assistant director began to engage in reprisals against her.

C. Plaintiff's assistant director did not terminate his moratorium on IAA and ICA cases until at least early 2009, when Congress began to investigate and the media began to report on Defendant SEC's and NYRO's failure to enforce the securities acts, and in particular the IAA and ICA, against Bernard Madoff, despite the warnings of an external whistleblower. Immediately thereafter, the reprisals against Plaintiff by Defendant SEC's senior officials broadened and intensified and would continue until the present.

9. Between September 2004 and September 2007, acting on the recommendations of Plaintiff's supervisors, Defendant SEC promoted Plaintiff each year to a higher grade level, three promotions in three years. Over the same period of time, again acting on the recommendations of Plaintiff's supervisors, Defendant SEC rewarded Plaintiff's work with annual monetary awards and raises.

4

10. After Plaintiff blew the whistle on her assistant director's no "IM cases" policy, as alleged above, Defendant SEC and Plaintiff's supervisors did not formally promote her again from 2007 to the present. Defendant SEC would slow down and then stop the monetary awards and raises to Plaintiff.

11. Despite the failure of Defendant SEC and Plaintiff's supervisors to formally promote her after her disclosures regarding her assistant director's moratorium on IAA and ICA, Defendant SEC and Plaintiff's immediate supervisors continued to assign her greater duties and responsibilities until she was performing the duties and tasks of a staff person two grade levels above her formal, official grade level of SK-14. Defendant SEC continued to pay Plaintiff for performing the work of an SK-14 staff attorney, while Plaintiff's immediate supervisors, with the acquiescence of Plaintiff's entire chain of command, directed Plaintiff to perform the tasks and assume the responsibilities of an SK-16 staff attorney.

12. As a consequence of Plaintiff's whistleblowing as alleged above, Plaintiff's supervisors, acting in their capacity as Defendant SEC's senior officials, have continued to block Plaintiff's request that her pay level be raised from an SK- 14 level to an SK-16 level, commensurate with the responsibilities and duties she is and was performing. In May 2011, an independent contractor, retained by Defendant SEC conducted a classification audit by applying the SEC Universal Classification Standard to determine whether Plaintiff was performing the duties and tasks of an SK-16 level staff person. After interviewing Plaintiff and her immediate supervisor and after reviewing Plaintiff's desk audit questionnaire, which was prepared by Plaintiff with the participation of her immediate supervisor, the independent contractor determined that Plaintiff was operating at and carrying out the responsibilities of an SK-16 staff person. The independent contractor awarded Plaintiff 1,760 points out of a

possible 1,760 points, conclusively establishing that Plaintiff was acting at an SK-16 level. A copy of the classification audit report is attached hereto as Exhibit 1 and incorporated herein by reference.

13. When Plaintiff's supervisors learned that she was considering a classification audit or other procedures to confirm her status as an SK-16 level staff person, they began to tamper with her personnel records, altering her scores on her performance evaluations, after they had been presented to her and she had signed them in acknowledgment of their receipt. A copy of the performance evaluation for the period from June 30, 2010, thorough September 30, 2010, is attached hereto as Exhibit 2. The alterations to Exhibit 2 are self evident on pages 1, and 3 through 6, where the higher performance grade was whited out and a lower performance grade checked.

14. After Plaintiff received the perfect score confirming that she was carrying out the responsibilities and tasks of an SK-16 level staff person, her supervisors refused to provide Plaintiff with a copy of the classification audit report and repeatedly gave Plaintiff different and conflicting reasons why they could not give it to her.

15. On January 30, 2012, Plaintiff filed a whistleblower complaint with the Office of Special Counsel (OSC) alleging that Defendant SEC had engaged in unlawful reprisals against her and seeking appropriate remedies for those reprisals. Plaintiff filed an amendment (Amendment) to her original complaint with the OSC on April 22, 2013, which describes with specificity the allegations stated above. A copy of said Amendment is attached hereto and incorporated herein by reference as Exhibit 3.

16. As alleged more specifically below, Plaintiff has requested Defendant SEC to release records under FOIA and the Privacy Act which relate to and support the allegations stated in

the Amendment (Exhibit 3). Defendant SEC has failed and continues to fail to release the vast majority of the records specified in Plaintiff's FOIA requests, because the release of said records will support the allegations of Plaintiff's complaint to the OSC, including records which demonstrate the conscious decision of Plaintiff's assistant director not to enforce the IAA or ICA with the knowledge and consent of Plaintiff's entire chain of command, including NYRO's director.

17. In denying Plaintiff's request for access to and copies of SEC records relating to her pending complaint with the OSC, Defendant SEC has consistently relied upon Exemption 6 and Exemption 7(C). In so doing, Defendant SEC is withholding records which demonstrate the misconduct of senior SEC officials in failing to enforce the IAA and ICA, the misconduct of even higher level SEC officials in permitting subordinate supervisory staff to ignore Congressional mandates to enforce the IAA and ICA, by engaging in reprisals against Plaintiff, and by tampering with her personnel records and concealing from her the classification audit, as alleged herein. This court previously rejected the SEC's assertions of Exemption 6 and Exemption 7(C) to withhold similar records from a whistleblower in *Aguirre v. SEC*, 551 F. Supp. 2d 33 (D.D.C. 2008).

## THE FOIA/PRIVACY ACT REQUESTS

18. By letter of December 8, 2011, pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of specified documents which relate to the allegations in the Amendment (Exhibit 4).

19. During telephone conferences on December 21, December 22, and December 29, 2011, between Plaintiff and Defendant SEC's FOIA Office staff, Plaintiff discussed the possibility of narrowing the scope of her December 8, 2011, FOIA request, but no agreement was

reached to do so. By her email of January 3, 2012, Plaintiff requested the FOIA Office to proceed as follows: "Please proceed to process my 12/8/11 FOIA/Privacy Act request WITHOUT ANY modifications or amendments based on our communications since the submittal date of that request."

20. By letter of January 5, 2012, a Defendant SEC FOIA officer informed Plaintiff that her request would be placed in the first-in, first-out (FIFO) track.

21. On January 6, 2012, Plaintiff submitted a revised and narrowed request pursuant to FOIA and the Privacy Act to Defendant SEC. A copy of said document is attached hereto as Exhibit 5 and incorporated herein by reference.

22. Said January 6, 2012, FOIA request, Exhibit 5, specified the following definitions in relation to the requested records:

   A) "Record" or "Records" means all writings and other tangible forms of expression in your possession, custody or control, including drafts or finished versions, originals, copies or annotated copies, however created, produced or stored (manually, mechanically, electronically, or otherwise), including but not limited to books, papers, files, notes, reports, correspondence, memoranda, reports, electronic mail (in whatever manner they are stored including backup tapes), messages or logs, notes or minutes of conversations or meetings, contracts, agreements, calendars, date books, diaries, schedules, itineraries, magnetic tape, tape recordings, disks, diskettes, disk packs and other electronic media, microfilm, microfiche, fields of information and storage devices.

   B) Time Period (unless otherwise specified) means July 20, 2009 to the present.

C) "Designated Individuals" means James Capezzuto and/or George Canellos.

D) "2008 I.G. Report": Report issued on or about April 18, 2008 by the SEC Office of the Inspector General entitled "Investigation of Alleged Unethical Instructions to Close Cases and Failure to Pursue Investigations."

E) "2011 I.G. Investigation": The SEC Office of the Inspector General's investigation in 2011 into the circumstances concerning the 2011 desk audit of Kathleen Furey.

23. Said FOIA request of January 6, 2012, Exhibit 5, requested "access to and copies of any records concerning or relating to the matters specified" as follows:

1. All Records generated or received by the Designated Individuals during the Time Period mentioning "Kathleen" or "Furey" or "desk audit" (in the case of emails, include all subsequent emails in the chain), except emails which were sent to or received by fureyk@sec.gov;

2. All Records generated or received by the Designated Individuals during the Time Period mentioning the 2008 I.G. Report or the investigation which led to such report (in the case of emails, include all subsequent emails in the chain);

3. All emails generated or received by Tom Biolsi between December 1, 2008 and August 31, 2009 mentioning "Kathleen" or "Furey," except emails sent to or received from fureyk@sec.gov (in the case of emails, include all subsequent emails in the chain);

4. All Records (including interview notes) generated or received by Lynn D. Williams (contractor) and/or Serco concerning the 2011 desk audit of

> Kathleen Furey (in the case of emails, include all subsequent emails in the chain);
>
> 5. The unredacted 2008 I.G. Report.

24. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in paragraph 23 in one or more systems of records.

25. On January 6, 2012, Plaintiff's counsel informed Barry D. Walters, Defendant SEC's Director/Chief FOIA Officer, of Plaintiff's objection to a conflict of interest created by the roles of Associate General Counsel Richard M. Humes in (1) representing Defendant SEC in any administrative and civil action brought by SEC staff relating to improper personnel actions, while (2) routinely blocking access to records relating to said personnel actions and exercising control over access to said records by his de facto supervision of records relating to said personnel actions through his de facto control over the operations of the FOIA Office and any appeals therefrom. A copy of said document is attached hereto as Exhibit 6 and incorporated herein by reference.

26. On January 10, 2012, in an email from Plaintiff's counsel to Defendant SEC's FOIA Office, Plaintiff revised her request and agreed that the search for the records described in her January 6 request, as alleged in paragraph 23, could be conducted by a search of electronic records. Said email is attached hereto as Exhibit 7, and incorporated herein by reference.

27. On January 10, 2012, Defendant SEC denied in part Plaintiff's request. A copy of said document is attached hereto as Exhibit 8 and incorporated herein by reference.

28. Plaintiff is informed and believes, and thereon alleges, that on January 10, 2012, Defendant SEC's FOIA Office informed Defendant SEC's Office of Information Technology ("OIT") that the FOIA Office had estimated it would take between 15 and 20 hours to perform an

electronic search of the records sought by Plaintiff. A redacted copy of said email is attached hereto as Exhibit 9 and incorporated herein by reference. Plaintiff is further informed and believes, and thereon alleges, that the OIT sought through an email the approval of Associate General Counsel Richard Humes before it would conduct a search for the records requested by Plaintiff. A redacted copy of said email is attached hereto as Exhibit 9 and incorporated herein by reference.

29. By letter of September 17, 2012, Defendant SEC's FOIA Office denied in part Plaintiff's request relying upon 5 U.S.C. § 552(b)(5), (6) and (8), 17 CFR § 200.80(b)(5), (6) and (8). A copy of said letter is attached hereto as Exhibit 10 and incorporated herein by reference.

30. On September 22, 2012, Plaintiff appealed the decision of Defendant SEC's FOIA Office. A copy of said letter is attached hereto as Exhibit 11 and incorporated herein by reference. By letter of January 7, 2013, Associate General Counsel Richard M. Humes, acting for the Commission under delegated authority, denied Plaintiff's appeal. A copy of said letter is attached hereto as Exhibit 12 and incorporated herein by reference.

31. By letter of April 12, 2012, pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of the following documents:

   1. All Records generated or received by H. David Kotz during the time period [January 1, 2011, through December 31, 2011] mentioning, referring to, or concerning Kathleen Furey (in the case of emails, include all subsequent emails in the chain);
   2. The unredacted 2011 I.G. Report.

   A copy of said letter is attached hereto as Exhibit 13 and incorporated herein by reference

32. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in paragraph 31 in one or more systems of records.

33. By letter of April 27, 2012, Defendant SEC acknowledged receipt of the FOIA request and assigned it number 12-00001-OIGP.

34. By letter of September 12, 2012, Defendant SEC partially denied access to both requests in FOIA request number 12-00001-OIGP. Defendant SEC withheld information under 5 U.S.C. § 552(b)(6), (7)(C) and (8), 17 CFR § 200.80(b)(6), (7)(iii) and (8). A copy of said letter is attached hereto as Exhibit 14 and incorporated herein by reference.

35. On September 22, 2012, Plaintiff appealed the decision of Defendant SEC's FOIA Office. A copy of said letter is attached hereto as Exhibit 11 and incorporated herein by reference.

36. On January 7, 2013, Defendant SEC reiterated its initial decision in its final decision regarding this FOIA request, number 12-00001-OIGP. A copy of said letter is attached hereto as Exhibit 15 and incorporated herein by reference.

### PLAINTIFF'S CLAIM FOR RELIEF: VIOLATIONS OF FOIA

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

2. Plaintiff is entitled by law to access the records requested under the FOIA.

3. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 through 5 of Plaintiff's January 6, 2012, request for the records (Exhibit 5), as modified by the January 10, 2012, email of Plaintiff's counsel (Exhibit 7) as specified in paragraph 23 above.

4. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 and 2 of Plaintiff's April 12, 2012, request for records as specified in paragraph 31 above.

**PLAINTIFF'S CLAIM FOR RELIEF: VIOLATIONS OF THE PRIVACY ACT**

5. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

6. Plaintiff is entitled by law to access the records requested under the Privacy Act, 5 U.S.C. § 552a.

7. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraphs 1 through 5 of Plaintiff's January 6, 2012, request for the records (Exhibit 5), as modified by the January 10, 2012, email of Plaintiff's counsel (Exhibit 7) as specified in paragraph 23 above.

8. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraphs 1 and 2 of Plaintiff's April 12, 2012, request for records (Exhibit 13) as specified in paragraph 31 above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that Defendant SEC has violated the FOIA and the Privacy Act by failing to satisfy Plaintiff's January 6, 2012, and April 12, 2012, requests for records as specified in paragraphs 23 and 31 above;

B. Order Defendant SEC to immediately search for and release all records responsive to paragraphs 1 through 5 of the January 6, 2012, request for records as specified in paragraph 23 above, and paragraphs 1 and 2 of the April 12, 2012, request for records as specified in paragraph 31 above;

C. Award Plaintiff her costs and reasonable attorney fees and litigation costs in this action; and

D. Grant such other and further relief as the Court may deem just and proper.

Dated: May 10, 2013

Respectfully Submitted,

_____
Gary J. Aguirre
California Bar No. 38927
501 W Broadway, Ste. 800
San Diego, CA 92101
619-400-4960

_____
Scott A. Hodes
DC Bar No. 430375
P.O. Box 42002
Washington, DC 20015